**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF KANSAS**

JENNIFER K. KINCAID

       **Plaintiff,**

v.                                     **Case No. 05-2418-JWL**

STACEY STURDEVANT, et al.

       **Defendants.**

**<u>MEMORANDUM AND ORDER</u>**

Plaintiff Jennifer Kincaid filed suit in Kansas state court on September 7, 2005, alleging claims for defamation and wrongful eviction. The matter subsequently was removed to this court by Ms. Sturdevant, the manager at plaintiff's former apartment building. Plaintiff then filed an amended complaint on November 30, 2005. In addition to Ms. Sturdevant, she named as defendants in the case the so-called "AIMCO defendants."[1] The new complaint also added seventeen new claims. In all, plaintiff has alleged nineteen claims against Ms. Sturdevant and the AIMCO defendants (together, "the defendants").[2]

---

[1] The "AIMCO defendants" are Apartment Investment and Management Company; AIMCO/Bethesda Holdings, Inc.; AIMCO-GP, Inc.; AIMCO-LP, Inc.; NHPMN Management, LLC; AIMCO Properties, LP; Central Park Towers Limited Partnership; and Central Park Towers II Limited Partnership.

[2] Because Ms. Sturdevant acted as property manager for the AIMCO defendants, the parties often advance the same arguments in reference to both Ms. Sturdevant's partial motion to dismiss and the AIMCO defendants' partial motion to dismiss. Thus, unless the court

This matter comes before the court on the partial motions to dismiss the amended complaint filed by Ms. Sturdevant (doc. 20) and the AIMCO defendants (doc. 49).   As explained below, the motions are granted in part and denied part.   Specifically, the motions to dismiss are granted as to count 5 (Americans with Disabilities Act), count 6 (Kansas Human Rights Act), count 7 (Kansas Consumer Protection Act), count 14 (defamation), count 15 (fraud), count 16 (negligent misrepresentation), count 18 as to Ms. Sturdevant (negligent hiring and retention), and count 19 (assault).   The motions to dismiss are denied, however, as to count 8 (breach of contract), count 9 (intentional infliction of emotional distress), count 11 (breach of the covenant of quiet enjoyment), count 12 (wrongful eviction), count 13 (retaliatory eviction), and count 17 (conversion).

<u>**BACKGROUND**</u>

This suit arises out Ms. Kincaid's eviction from her residence at Central Park Towers ("CPT"), an apartment complex in Kansas City, Kansas.   Plaintiff resided at CPT from May 1, 2003, until her eviction became effective on February 1, 2005.   The defendants allege that they evicted her based on eight lease violations, including: (1) disturbing and/or harassing other residents; (2) failure to obey quiet hours; (3) cursing at management; (4) permitting prohibited persons to enter the property; and (5) allowing guests to participate in drunk and disorderly conduct.   Based on these combined violations, the defendants issued plaintiff a notice of eviction on October 18, 2004.   The defendants then obtained an order of eviction from the

---

specifies otherwise, all holdings apply with equal force both to Ms. Sturdevant's partial motion to dismiss and to the AIMCO defendants' partial motion to dismiss.

District Court of Wyandotte County, Kansas, on January 19, 2005.   Based on the judgment issued by that court, plaintiff was ordered to surrender possession of her residence at CPT as of February 1, 2005.

Plaintiff, in response to the defendants' actions, alleges that she was wrongfully evicted from her apartment in CPT, a public housing facility, because Ms. Sturdevant targeted her based on the mixed race of plaintiff's daughter and the race of plaintiff's boyfriend at the time. Plaintiff contends that the AIMCO defendants are liable for the actions of their manager, Ms. Sturdevant, whom plaintiff alleges is an overt member of the Ku Klux Klan.  As a result of Ms. Sturdevant's and the AIMCO defendants' malicious efforts in concocting eight false lease violations, which plaintiff alleges she was given all at once so that she could not avoid being evicted, plaintiff alleges that she has suffered a variety of physical, mental, and economic damages.

At issue now are many of the claims raised by plaintiff in her amended complaint.  As a preliminary matter, through her response briefs plaintiff has withdrawn against all the defendants her claims in count 5 (Americans with Disabilities Act), count 6 (Kansas Human Rights Act), count 7 (Kansas Consumer Protection Act), and count 14 (defamation).  The motions to dismiss those claims are therefore granted as unopposed.  In addition, plaintiff has clarified that count 18 (negligent hiring and retention) applies only to the AIMCO defendants. Thus, the motion to dismiss count 18 is granted as to Ms. Sturdevant.

The defendants' partial motions to dismiss target several other claims.  They initially assert that based on the prior eviction judgment entered in Kansas state court against plaintiff,

the claims in count 8 (breach of contract), count 12 (wrongful eviction), and count 13 (retaliatory eviction) are all barred under the doctrine of collateral estoppel. They also attack as deficient as a matter of law the claims alleged in count 9 (intentional infliction of emotional distress), count 11 (breach of the covenant of quiet enjoyment), count 15 (fraud), count 16 (negligent misrepresentation), count 17 (conversion), and count 19 (assault).

### LEGAL STANDARD FOR A MOTION TO DISMISS

The court will dismiss a cause of action for failure to state a claim only when "it appears beyond a doubt that the plaintiff can prove no set of facts in support of his [or her] claims which would entitle him [or her] to relief," *Aspenwood Investment Co. v. Martinez,* 355 F.3d 1256, 1259 (10th Cir. 2004) (quoting *Conley v.. Gibson,* 355 U.S. 41, 45-46 (1957)), or when an issue of law is dispositive. *Neitzke v. Williams,* 490 U.S. 319, 326 (1989). The court accepts as true all well-pleaded facts, as distinguished from conclusory allegations, and all reasonable inferences from those facts are viewed in favor of the plaintiff. *Adams v. Kinder-Morgan, Inc.,* 340 F.3d 1083, 1088 (10th Cir. 2003). The issue in resolving a motion is "not whether [the] plaintiff will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims." *Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 511 (2002) (quoting *Scheuer v. Rhodes,* 416 U.S. 232, 236 (1974)).

### ANALYSIS

Following the order of the parties' motions, the court will now address the counts of plaintiff's amended complaint attacked in the partial motions to dismiss.

### Counts 8, 12, and 13 - Collateral Estoppel

The defendants initially argue that count 8 (breach of contract), count 12 (wrongful eviction), and count 13 (retaliatory eviction) are all barred based on the doctrine of collateral estoppel. They contend that because the legality of plaintiff's eviction is confirmed in a Kansas state court judgment, then plaintiff may not attempt to re-litigate in this forum any of the issues decided by that prior judgment.

In deciding whether to give preclusive effect to the prior state court judgment, the court would usually determine whether state law or federal law principles control the inquiry. That choice, however, would be without consequence here, as both paths produce an identical conclusion. Because "'Kansas law does not appear to differ significantly from the federal law regarding preclusion doctrines,' Kansas courts specifically look to Supreme Court and circuit law to decide application of the doctrines." *Woodard*, 2001 WL 997925, at * 5 (10th Cir. 2001) (quoting *Grimmett v. S & W Auto Sales Co.*, 26 Kan. App. 2d 482, 988 P.2d 755, 759-60 (Kan. App 1999)). "Thus, in this case, the outcome is the same whether we apply federal law or [Kansas] law to the question of collateral estoppel." *Frandsen v. Westinghouse Corp.*, 46 F.3d 975, 978 (10th Cir. 1995). Adhering to that guidance, the court will apply federal common law and Kansas law interchangeably in this context.

Collateral estoppel, or issue preclusion, precludes a party from re-litigating an issue that was actually litigated and determined in a prior action. *See Blonder-Tongue Labs. v. Univ. of Ill. Found.*, 402 U.S. 313, 329 (1971); *Aselco, Inc. v. Hartford Ins. Group*, 28 Kan. App. 2d 839, 849 (2001). More specifically, "[t]he doctrine precludes a court from

5

reconsidering an issue previously decided in a prior action where (1) the issue previously decided is identical with the one presented in the action in question, (2) the prior action has been finally adjudicated on the merits, (3) the party against whom the doctrine is invoked was a party, or in privity with a party, to the prior adjudication, and (4) the party against whom the doctrine is raised had a full and fair opportunity to litigate the issue in the prior action." *B-S Steel Of Kansas, Inc. v. Texas Industries, Inc.*, 439 F.3d 653, 662 (10th Cir. 2006); *see also In re City of Wichita*, 277 Kan. 487, 506 (2004) (citing *Waterview Resolution Corp. v. Allen*, 274 Kan. 1016, 1023 (2002)).

   In this matter, the defendants have not established the first element of collateral estoppel; they have not shown that the same issues in this case were "actually litigated" in the prior eviction proceeding.   It is true that "once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case." *Matosantos Commercial Corp. v. Applebee's Intern., Inc.*, 245 F.3d 1203, 1208 (10th Cir. 2001) (quoting *Allen v. McCurry*, 449 U.S. 90, 94 (1980)).   But in arguing collateral estoppel based on a prior judgment, it is essential to show the precise contours, if not the exact language, of that prior judgment. Indeed, the linchpin to issue preclusion is a clear demonstration of what was "actually litigated" in the matter below; the doctrine applies "only '[w]hen an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment.'" *B-S Steel Of Kansas, Inc. v. Texas Industries, Inc.*, 439 F.3d 653, 662 (10th Cir. 2006) (quoting *Arizona v. California*, 530 U.S. 392, 414 (2000) (quoting Restatement

6

(Second) of Judgments § 27, at 250 (1982)). "'[I]t is incumbent upon the party asserting the [collateral estoppel] defense to prove that the issues were actually litigated and determined in the former action.'" *Strong v. Laubach,* 2005 WL 2858026, at *5 (10th Cir. 2005) (quoting *Happy Elevator No. 2 v. Osage Constr. Co.*, 209 F.2d 459, 462 (10th Cir. 1954)); *Anderson v. United States,* 2003 WL 1827809, at *2 (10th Cir. 2003) (citing *Klemens v. Wallace*, 840 F.2d 762, 765 (10th Cir. 1988)). The defendants bear the burden to make this showing, and the court may not speculate on their behalf.

The defendants here have not demonstrated that the prior judgment would preclude any issue in this case. The defendants do not show, even remotely, what was "actually litigated" in the eviction proceeding. Thus, with no way of knowing what that prior judgment stated, the court cannot determine what issues, if any, are now precluded. *See Happy Elevator No. 2 v. Osage Constr. Co.*, 209 F.2d 459, 462 (10th Cir. 1954) (citing *Morgan v. Whitehead*, 196 Okla. 402, 165 P.2d 338, 341 (1946) ("Under the record presented in the case at bar, in no possible way can this court know the issues or the judgment in the former case. They were not proved.")). At bottom, it is impossible to give preclusive effect to an unknown judgment.

Even if the defendants had met their burden by showing the contours of the prior judgment, however, they still would not overcome the Kansas statute which commands that a judgment in an eviction proceeding "shall not be a bar to any subsequent lawsuit brought by either party for claims not included in such judgment." K.S.A. § 61-3802.[3] As plaintiff

---

[3] Plaintiff also attempts to rely on K.S.A. § 61-1709(a), but the Kansas legislature repealed that statute in 2001.

alleges that she did not raise any claims in the eviction proceeding, the statute on its face would prevent the defendants from asserting collateral estoppel against any of her claims in this action.

The AIMCO defendants respond that the statute is irrelevant. They argue that "while Kincaid may not have asserted affirmative claims of racial discrimination in that proceeding, she certainly argues, as she does here, that the eviction was wrongful and in breach of her lease." That interpretation, however, contravenes the plain meaning of the statute. Perhaps plaintiff argued against her eviction, but that is far short of affirmatively bringing "claims" in a prior proceeding.

Moreover, the AIMCO defendants' position ignores the overall statutory scheme of Chapter 61 of the Kansas code. The language in § 61-3802 must be read in conjunction with a more general statute that explicitly restricts the preclusive effect of Chapter 61 judgments. That statute mandates that: "Upon timely application of the plaintiff and in the discretion of the court, a defendant may be required to plead any counterclaim which such party has against the plaintiff. . . ." K.S.A. § 61-2905(a)(1). The next section provides: "A defendant shall not be estopped from asserting in a subsequent action any claim which such defendant may have against the plaintiff, if such defendant is not required to plead such claim pursuant to this section." *Id*. at § 61-2905(a)(2). Neither defendant alleges that it applied to the state court for an order requiring plaintiff to raise any counterclaims in the prior eviction proceeding, which means that plaintiff "shall not be estopped" in this action. *Id*. The statute, which the AIMCO defendants do not address, could not be any clearer.

8

In sum, given the defendants' failure to meet their burden of demonstrating what was "actually litigated" in the eviction proceeding, as well as the statutory framework that directly forecloses their argument, their collateral estoppel attack is without merit.   The motion is therefore to that extent denied.

### Count 9 - Intentional Infliction of Emotional Distress

In Count 9, plaintiff alleges the tort of intentional infliction of emotional distress (also known as the tort of "outrage") based on the combined force of threats and actions by the defendants, including evicting plaintiff from her dwelling by fabricating lease violations; converting plaintiff's property after she was evicted; improperly using a police officer to threaten plaintiff with arrest; asking other tenants to give false statements about plaintiff to authorities; and targeting plaintiff because of her daughter's mixed race and her boyfriend's race.   Plaintiff, who allegedly suffers several physical and mental disabilities, contends that the defendants directly caused her to suffer severe physical and mental distress.

In their motions, the defendants initially assert a one-year statute of limitations for the tort of intentional infliction of emotional distress.   They argue that because the majority of plaintiff's allegations occurred well over one year before plaintiff filed suit, they are time-barred and cannot be relied upon by plaintiff.   That assertion is incorrect as a matter of law; "[t]he statute of limitations on a claim of outrage and intentional infliction of emotional distress is 2 years." *Hallam v. Mercy Health Center of Manhattan, Inc.*, 278 Kan. 339, 346 (2004).   Thus, the claim is not time-barred, and the court will address the substance of the claim without excluding any of plaintiff's allegations under the statute of limitations.

To establish a claim of intentional infliction of emotional distress under Kansas law, a plaintiff must demonstrate the following four elements: "(1) [t]he conduct of the defendant must be intentional or in reckless disregard of the plaintiff; (2) the conduct must be extreme and outrageous; (3) there must be a causal connection between the defendant's conduct and the plaintiff's mental distress; and (4) the plaintiff's mental distress must be extreme and severe." *Moore v. State Bank of Burden*, 240 Kan. 382 (1986) (citing *Hoard v. Shawnee Mission Med. Ctr.*, 233 Kan. 267 (1983)).

Before reaching the elements of the claim, "the court must, as a matter of law, first determine that reasonable fact finders might differ as to: (1) whether defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery, and (2) whether plaintiff's emotional distress was so extreme and severe that the law must intervene because no reasonable person should be expected to endure it." *Nicol v. Auburn-Washburn USD*, 437, 231 F. Supp. 2d 1107, 1118 (D. Kan. 2002) (citing *Moore*, 729 P.2d at 1211). The defendants argue that plaintiff cannot clear either of these two threshold barriers.

**a.    Extreme and Outrageous Conduct**

"In order for conduct to be deemed sufficient to support the tort of outrage, it must be so outrageous in character and so extreme in degree as to go beyond the bounds of decency and to be regarded as atrocious and utterly intolerable in a civilized society." *Miller v. Sloan, Listrom, Eisenbarth, Sloan and Glassman*, 267 Kan. 245, 257 (1999). To prevent a flood of claims, "[t]he threshold requirements for outrage causes of action are 'necessarily high to separate meritorious claims from those based on trivialities or hyperbole.'" *Nicol*, 231 F.

10

Supp. 2d at 1118 (quoting *Rupp v. Purolator Courier Corp.*, 790 F. Supp. 1069, 1073 (D. Kan. 1992)).   "'The classic test is that liability may be found to exist when the recitation of the facts to an average citizen would arouse resentment against the actor and lead that citizen to spontaneously exclaim, Outrageous!'" *Mai v. Williams Indus., Inc.*, 899 F. Supp. 536, 542 (D. Kan. 1995) (quoting *Fusaro v. First Family Mortgage Corp., Inc.*, 257 Kan. 794 (1995)).

In *Lowe v. Surpas Resource Corp.*, 253 F. Supp. 2d 1209 (D. Kan. 2003), the undersigned addressed a claim for outrage based on abusive debt collection techniques.   In demonstrating the variation in outcomes, the undersigned compared the result in *Dawson v. Assoc. Fin. Serv. Co. of Kansas, Inc.*, 215 Kan. 814 (1974), with the result in *Mai v. Williams Indus., Inc.*, 899 F.Supp. 536 (D. Kan. 1995).   These two cases exposed the conflicting precedent on the tort of outrage in Kansas, even among cases with highly similar facts.

The Kansas Supreme Court in *Dawson* found that the trial court incorrectly granted a directed verdict denying the outrage claim as a matter of law.   The Court explained that attempts to collect on a debt, in conjunction with threats, could constitute intentional infliction of emotional distress based on the fragility of the plaintiff and hostility of the threats.   **215 Kan. at** 825.   In *Mai*, by contrast, the defendant's tactics were held insufficient, as a matter of law, to constitute outrage because of the equal sophistication of the parties: "There was not a great disparity in power between the parties to this matter. They were experienced high-echelon business people with considerable resources and ready access to legal counsel to protect their rights." 899 F. Supp. at 542.

Attempting to reconcile the contrary results, the undersigned explained in *Lowe* that

"[o]ne of the primary factors distinguishing *Mai* from *Dawson* was the plaintiff's susceptibility to emotional distress and the defendant's knowledge of such infirmity."   253 F. Supp. 2d at 1243.   Based primarily on this factor—the plaintiff's emotional fragility—the undersigned held that the debt collection tactics in *Lowe* did not rise to the level of extreme and outrageous conduct because the plaintiff   "failed to offer evidence suggesting that the defendants knew she was particularly vulnerable." *Id.* at 1244.

Although the facts here do not involve hostile debt collection, as they did in *Lowe*, the above discussion is relevant to the extent that plaintiff is radically less sophisticated than the defendants.   Not only do they have more resources, but plaintiff alleges that she suffers both physical and mental disabilities.   Moreover, at the point she was evicted from her dwelling, she became even more vulnerable to any hostilities directed at her.   Thus, this factor, which the Kansas courts repeatedly have emphasized, tilts in favor of plaintiff.

The plaintiff in a case with more similar facts argued that the defendant had "abused the criminal justice process."   *Kelly v. Bank Midwest, N.A.*, 161 F. Supp. 2d 1248, 1261 (D. Kan. 2001).   In rejecting the analogy to *Taiwo v. Vu*, 249 Kan. 585 (1991), arguably the touchstone case on the tort of outrage in Kansas, the undersigned explained:

> The court disagrees and easily concludes that defendant's conduct here falls far short of the intentional and malicious behavior described in *Taiwo*.   There is no evidence here, for example, that defendant provided false information to the police concerning plaintiff.   Moreover, unlike the situation in *Taiwo*, there is no evidence that defendant contacted the police to serve some nefarious purpose.   There is no evidence that any of defendant's agents lied to anyone else about plaintiff.   For these reasons, *Taiwo* is easily distinguishable from the facts present here.

*Id.*

12

Although not present there, many of those factors are present here.  In arguing that the defendants' aforementioned conduct was extreme and outrageous, plaintiff analogizes the facts here to the facts in *Taiwo*, where the Court concluded that Ms. Vu's conduct was extreme and outrageous under Kansas law.  249 Kan. at 593.  The defendants correctly respond that, under *Taiwo*, statements alone are, as a matter of law, not extreme and outrageous.  249 Kan. at 593-94 (quoting *Roberts v. Saylor,* 230 Kan. 289 (1981)).  But that response is not persuasive because plaintiff here alleges far more than "mere words."  She alleges that she was evicted from her home based on false lease violations; that the defendants converted her property after she was evicted; that the defendants abused their power by asking other tenants to lie to authorities and by having a police officer threaten to arrest her; and she alleges that she was both physically and mentally disabled, which amplified the hostility directed at her.  Thus, the facts here, in fact, are relatively analogous to the facts in *Taiwo*:

> The Taiwos' claim is distinguishable from our prior cases involving the tort of outrage.  Here, Ms. Vu's liability did not arise from mere insults, indignities, threats, annoyances, petty expressions, or other trivialities. This was not a matter of the Taiwos' feelings merely being hurt.  Ms. Vu's conduct cannot be explained as simply expressing her opinion or the result of a mistaken belief. She abused the criminal justice process to her own ends.  Even when the police gave her the opportunity to correct her story, she refused.  Reasonable people could regard her behavior as atrocious and utterly intolerable in a civilized society.  If reasonable people do not agree on whether Ms. Vu's behavior was outrageous, then the question should be submitted to the jury.

249 Kan. at 593.

The allegations of plaintiff's amended complaint, which the court is bound to accept as true at this procedural juncture, are substantial.  If she could prove these facts at trial reasonable people could find the defendants' conduct outrageous.  As the Kansas Supreme

13

Court has counseled: "If the court determines . . . that reasonable factfinders might differ as to whether defendant's conduct was sufficiently extreme and outrageous and the plaintiff's emotional distress was genuine and so severe and extreme that it caused injury, then it must be left to the jury to determine liability." *Burgess v. Perdue*, 239 Kan. 473, 476 (1986).  The plaintiff has satisfied the first threshold requirement.

**b.      Extreme and Severe Emotional Distress Inflicted**

"The second threshold requirement which must be met and which the court must first determine as present is that the plaintiff's emotional distress is sufficiently severe, genuine and extreme that no reasonable person should be expected to endure it." *Taiwo*, 249 Kan. at 593-94 (citation omitted).   "Emotional distress passes under various names such as mental suffering, mental anguish, nervous shock, and includes all highly unpleasant mental reactions, such as fright, horror, grief, shame, embarrassment, anger, chagrin, disappointment, and worry. However, it is only when emotional distress is extreme that possible liability arises."  *Id.* at 594.   Ultimately, plaintiff's "emotional distress must in fact exist, and it must be severe."  *Id*. In assessing its degree, "[i]t is for the court to determine whether on the evidence severe emotional distress can be found; it is for the jury to determine whether, on the evidence, it has in fact existed." *Id*.

In *Lowe*, the undersigned found that the plaintiff had not demonstrated emotional distress "as severe or extreme a fashion as the plaintiff in *Dawson*, who suffered physical symptoms such as loss of bladder control, inability to walk without assistance and difficulty with speech and her ability to grasp objects."  253 F. Supp. 2d at 1245 (citing *Dawson*, 529

14

P.2d at 108).   Here, in stark contrast, the allegations are substantial.   Plaintiff alleges that she "has suffered and is continuing to suffer a great and irreparable loss and injury to her person and property and including the loss of her reputation in the community, mental anguish, extreme anxiety, humiliation, pain, suffering, illness, [and] chronic pulmonary disease . . . ."  If taken as true, these allegations satisfy the requirement that the distress be severe.   *See id.* at 1240 (exploring what constitutes severe distress under Kansas law).

In sum, at this stage, the defendants have not demonstrated as a matter of law that plaintiff cannot overcome the two threshold requirements for the tort of intentional infliction of emotion distress.  As to Count 9, therefore, the motions to dismiss are denied.

### Count 11 - Breach of Covenant of Quiet Enjoyment

In Count 11, the defendants assert that plaintiff cannot allege a breach of the covenant of quiet enjoyment because the covenant only applies when a third-party disrupts the tenant's use of the dwelling, not when the landlord does so.   Under Kansas law, however, that assertion is incorrect.   As plaintiff points out, "a lease of realty carries with it an implied covenant that the lessee shall have quiet and peaceable enjoyment of the leased promises as against the lessor or those lawfully claiming under him."   *Thurman v. Trim*, 199 Kan. 679, 682 (1967). The covenant simply is not confined to a relationship between the tenant and a third-party ouster.  The defendants' motions as to this count, therefore, are denied.

### Counts 15 and 16 - Fraud and Negligent Misrepresentation

In counts 15 and 16 of the amended complaint, plaintiff alleges claims for fraud and negligent misrepresentation based on false statements made by the defendants surrounding her

eviction.   The language of these counts is vague, and "the basis for [her] requested relief is at best, unclear."   *United States v. Davis*, 214 F.R.D. 668, 669 (D. Kan. 2003).   The defendants nevertheless have explained why plaintiff's claims are deficient as a matter of law, and the court is persuaded by the numerous reasons given by the defendants that plaintiff has failed to state a claim for fraud or negligent representation.   Not only did plaintiff fail to plead fraud with particularity as required by Fed.R.Civ.P. 9(b), but plaintiff also did not allege that any false statements were communicated directly to her, or that any false statements related to a present, existing fact at they time they were made.

In addition, in her response briefs, plaintiff alters the factual allegations from the face of her amended complaint.   These novel factual allegations seem to suggest that plaintiff wishes to amend her claims in counts 15 and 16.   For example, she now alleges that the defendants employed an off-duty police officer to directly threaten her with false statements at the time of her eviction.   Plaintiff, however, did not include that allegation in her amended complaint.   She makes other more detailed allegations regarding untruthful statements that were communicated directly to her either by the defendants or an agent acting on their behalf. Again, her amended complaint did not contain these factual allegations.   Collectively, though, the court cannot be certain that these new allegations do not, as a matter of law, constitute fraud and negligent misrepresentation.

Given these new allegations, the court believes that the most appropriate course of action is to allow plaintiff the opportunity to file a second amended complaint.   The Federal Rules of Civil Procedure state that leave to amend is to "be freely given when justice so

requires." Fed.R.Civ.P. 15(a).   The decision whether to grant leave to amend is within the discretion of the district court.   *Hayes v. Whitman*, 264 F.3d 1017, 1026 (10th Cir. 2001). Based on the allegations that plaintiff now raises, the court cannot say that it appears beyond a doubt that she could prove no set of facts that would entitle her to relief if she were allowed to amend her complaint.   The court, therefore, will grant the defendants' motions to dismiss count 15 (fraud) and count 16 (negligent misrepresentation) without prejudice to plaintiff filing a second amended complaint on or before July 21, 2006, reasserting her claims for fraud and negligent misrepresentation.

### Count 17 - <u>Conversion</u>

In count 17, plaintiff alleges the tort of conversion.   Specifically, in support of that count, she alleges: "Defendants converted Plaintiff Kincaid's personal belongings when they disposed of her personal belongings without notice before and after she was evicted."

Initially, Ms. Sturdevant contends that she is not subject to the claim of conversion in count 17 because she did not personally dispose of plaintiff's personal property.   Plaintiff responds, however, that the language supporting count 17 in the amended complaint—"they disposed of her personal belongings"—should be interpreted to encompass Ms. Sturdevant in addition to the AIMCO defendants.   Because "all reasonable inferences from those facts are viewed in favor of the plaintiff," *Adams v. Kinder-Morgan, Inc.,* 340 F.3d 1083, 1088 (10th Cir. 2003), the court agrees with plaintiff that the amended complaint includes within count 17 the allegation that Ms. Sturdevant participated in converting plaintiff's personal belongings, particularly because Ms. Sturdevant does not deny that she was the apartment building manager

at the time plaintiff was evicted.  Thus, the court will address count 17 as alleged against all the defendants.

In evaluating the merits of count 17, the court first must define the tort of conversion under Kansas law.  "Conversion is the unauthorized assumption of right of ownership over personal property belonging to another."  *Farrell v. General Motors Corp.*, 249 Kan. 231, 245 (1991) (citing *Moore v. State Bank of Burden*, 240 Kan. 382, 386 (1986)).  It is well-established that if a landlord improperly sells or disposes of a tenant's personal property, a landlord can be liable for conversion.  *See Davis v. Odell*, 240 Kan. 261, 271 (1986) ("Because of the fact that the defendants in this case, as landlords in possession of the tenants' property, had no right to sell the property or dispose of it except as provided by law, their act of selling or disposing of the property constituted a conversion as a matter of law.").

Against this backdrop, the defendants assert two arguments which the court rejects.  First, they contend that plaintiff's claim fails as a matter of law because she did not make a demand for the return of her property after she was evicted.  In support, the defendants rely on *Queen v. Lynch Jewelers, LLC*, 30 Kan. App. 2d 1026, 1036 (2002), but it does not support their contention that failure to allege a demand is fatal under the facts of this case.  That case turned upon an analysis of whether defendant had the right to retain possession of a ring after plaintiff revoked his acceptance of it under the Uniform Commercial Code.  The matter of a demand was not an issue.  They also cite another Kansas Court of Appeals case, *J & J Wholesale, Inc. v. Euro-American Brands, LLC*, 2004 WL 720145 (Kan. App. 2004), for the proposition that "demand is a necessary element of conversion where, as here, the goods are

18

lawfully in the possession of the other party." *Id*. at * 3. That statement, however, applies to a bailment and is inapposite to the facts here, where plaintiff has alleged that the defendants never had lawful possession of her property by illegally evicting her. Moreover, in this case, plaintiff alleges that the defendants deterred her from making any demand when they threatened her with arrest on the day she was evicted. Although a failure to make a demand might ultimately prove relevant, the defendants are not entitled to judgment as a matter of law on this basis at this stage of the proceedings.

The second argument advanced by the defendants is that they are protected from plaintiff's conversion claim because they complied with the safe harbor provision of the Kansas Residential Landlord Tenant Act ("KRLTA"), K.S.A. § 58-2565(d). That provision offers protection from liability to a landlord who complies with certain conditions when storing and disposing of a tenant's personal property after the tenant is evicted. The flaw in their argument, however, is that they admittedly did not provide plaintiff the required notice. The plain language of the statute clearly requires that a landlord provide notice in order to take shelter under the protection of the statute:

> If the tenant abandons or surrenders possession of the dwelling unit and leaves household goods, furnishings, fixtures or any other personal property in or at the dwelling unit or if the tenant is removed from the dwelling unit as a result of a forcible detainer action, pursuant to K.S.A. 61-3801 through 61-3808, and amendments thereto, and fails to remove any household goods, furnishings, fixtures or any other personal property in or at the dwelling unit after possession of the dwelling unit is returned to the landlord, the landlord may take possession of the property, store it at tenant's expense and sell or otherwise dispose of the same upon the expiration of 30 days after the landlord takes possession of the property, if at least 15 days prior to the sale or other disposition of such property the landlord shall publish once in a newspaper of general circulation

in the county in which such dwelling unit is located a notice of the landlord's intention to sell or dispose of such property.   Within seven days after publication, a copy of the published notice shall be mailed by the landlord to the tenant at the tenant's last known address.   Such notice shall state the name of the tenant, a brief description of the property and the approximate date on which the landlord intends to sell or otherwise dispose of such property.   If the foregoing requirements are met, the landlord may sell or otherwise dispose of the property without liability to the tenant or to any other person who has or claims to have an interest in such property . . . .

*Id*. at § 58-2565(d).

Thus, a landlord is insulated only if the landlord complies with the detailed notice provisions outlined above.   In short, the defendants "may sell or otherwise dispose of the property without liability to tenant," but only "if the foregoing requirements are met."   *Id*. Here, the defendants do not even allege that they met those foregoing requirements.   More importantly, even if they had alleged that they met those requirements, plaintiff alleges that they did not, which would be sufficient to withstand this motion to dismiss. For all of the above reasons, the motions to dismiss the claim for conversion in count 17 are denied.

## Count 19 - Assault

The defendants also move to dismiss the claim for assault in count 19.   Under Kansas law, "[a]ssault is defined as 'an intentional threat or attempt, coupled with apparent ability, to do bodily harm to another, resulting in immediate apprehension of bodily harm.   No bodily contact is necessary.'"   *Vetter v. Morgan*, 22 Kan.App.2d 1, 4 (1995) (quoting *Taiwo v. Vu*, 249 Kan. 585, 822 P.2d 1024, 1027 (1991)).   "Ordinarily, words alone cannot be an assault. However, words can constitute assault if 'together with other acts or circumstances they put the other in reasonable apprehension of imminent harmful or offensive contact with his

20

person.'" *Id.* (internal citations omitted).

The first issue is whether Ms. Sturdevant ever engaged in the threats at issue.   She contends that she did not participate in the assault, which forecloses her liability.   That assertion ignores the rule that defendants "could be jointly liable if it were shown that they acted together with a goal of harassing and frightening [the plaintiff]." *United Services Auto. Ass'n v. Morgan*, 23 Kan. App. 2d 987, 991 (1997) (citing *Vetter*, 22 Kan.App.2d at 8)*; see also Beggerly v. Walker*, 194 Kan. 61, 64-66 (1964) (stating that one who directs another to commit an assault for one's own benefit is liable).   Plaintiff does, in fact, allege in her amended complaint that Ms. Sturdevant, acting as an employee of the AIMCO defendants, directed a police officer to threaten her with arrest.   Thus, plaintiff has alleged that both Ms. Sturdevant and the AIMCO defendants participated directly in the alleged assault.

But that is only a preliminary inquiry and by no means establishes the requisite elements for assault.   As the defendants point out, plaintiff must do more than recite the legal elements of assault to state a claim for relief; it is axiomatic that "[a] mere averment of an unlawful assault is but the statement of a legal conclusion." *Mathews v. Cook*, 170 Kan. 462, 463 (1951).   To this end, they argue that plaintiff's allegations, even if taken as true, do not constitute assault because plaintiff never alleges that their conduct placed her "in immediate apprehension of bodily harm."   Plaintiff responds with the conclusory statement that the first amended complaint is sufficient on its face to state a claim.   Only one sentence in the complaint relates to the alleged assault, however, and it states: "On the day the [sic] that Plaintiff Kincaid was to be evicted from the dwelling, approximately January of 2005,

Defendant Sturdevant intentionally threatened, harassed and coerced Plaintiff Kincaid by and through a police officer by directing the police officer to tell Plaintiff Kincaid to stop handing out a Federal Housing and Urban Development 'HUD' investigator's business cards to other residents of the dwelling or she would be arrested and thrown in jail."   Taken as true, that statement does not establish an assault.   The threatened arrest is entirely dependent on plaintiff continuing to hand out business cards, which makes it at most prospective.   More importantly, based on these distant threats that were conditioned on plaintiff's future actions, there is no allegation that plaintiff ever had an "immediate apprehension of bodily harm."   *Wilson v. Meeks*, 98 F.3d 1247, 1253 (10th Cir. 1996) (citing *Vetter*, 22 Kan. App. 2d 1, 913 P.2d 1200, 1203 (1995) (quoting *Taiwo*, 249 Kan. 585, 822 P.2d 1024, 1027 (1991)).   In fact, plaintiff does not allege that she ever had any apprehension of being touched, let alone an "immediate" apprehension, and her claim of assault therefore fails as a matter of law.   Finally, the exception in which "mere words" can constitute assault is limited; "words can constitute assault if 'together with other acts or circumstances they put the other in reasonable apprehension of imminent harmful or offensive contact with his person.'"   *Id.*   Here, plaintiff does not allege that any "other acts or circumstances" occurred.   Thus, for all of the reasons above, the motions to dismiss count 19 are granted.

## CONCLUSION

For the reasons explained above, Ms. Sturdevant's partial motion to dismiss (doc. 20) and the AIMCO defendants' partial motion to dismiss (doc. 49) are granted in part and denied in part.   Specifically, the partial motions to dismiss are granted as to count 5 (Americans with

Disabilities Act), count 6 (Kansas Human Rights Act), count 7 (Kansas Consumer Protection Act), and count 14 (defamation), count 15 (fraud), count 16 (negligent misrepresentation), count 18 as to Ms. Sturdevant (negligent hiring and retention), and count 19 (assault).  The motions to dismiss are denied, however, as to count 8 (breach of contract), count 9 (intentional infliction of emotional distress), count 11 (breach of the covenant of quiet enjoyment), count 12 (wrongful eviction), count 13 (retaliatory eviction), and count 17 (conversion).

**IT IS THEREFORE ORDERED BY THE COURT** that Ms. Sturdevant's partial motion to dismiss (doc. 20) and the AIMCO defendants' partial motion to dismiss (doc. 49) are granted in part and denied in part as set forth in full above.

**IT IS SO ORDERED** this 7th day of July, 2006.

s/ John W. Lungstrum
John W. Lungstrum
United States District Judge